JANET E. MOORE v. DANIEL H. PROPER; SHAUN O'HEARN; DR. SHAUN
O'HEARN, DDS, P.A.; AND AFFORDABLE CARE, INC.

·No. 443A11

(Filed 14 June 2012)

**Medical Malpractice— Rule 9(j)—proffered expert witness—
reasonably expected to quality under Rule 702**

The Court of Appeals properly reversed the trial court order
dismissing plaintiff's malpractice claim for failure to comply with
N.C.G.S. § 1A-1, Rule 9(j). Because plaintiff's proffered expert
witness could have been "reasonably expected to qualify as an
expert witness under Rule 702 of the Rules of Evidence," as
required by Rule 9(j)(1) of the North Carolina Rules of Civil
Procedure, the decision of the Court of Appeals was affirmed.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a
divided panel of the Court of Appeals, —— N.C. App. ——, 715 S.E.2d
586 (2011), reversing an order granting summary judgment for defend-
ants entered on 20 August 2010 by Judge James L. Baker, Jr. in
Superior Court, Madison County, and remanding for additional pro-
ceedings. On 8 December 2011, the Supreme Court allowed defend-
ants' petition for discretionary review of additional issues. Heard in
the Supreme Court on 16 April 2012.

*Long, Parker, Warren, Anderson & Payne, P.A., by Steven R.
Warren, for plaintiff-appellee.*

*Cranfill Sumner & Hartzog LLP, by Samuel H. Poole, Jr., Jaye
E. Bingham-Hinch, and M. Janelle Lyons, for Daniel H. Proper;
and Shumaker, Loop & Kendrick, LLP, by Scott M. Stevenson
and Scott A. Heffner, for Shaun O'Hearn, Dr. Shaun O'Hearn,
DDS, P.A., and Affordable Care, Inc.; defendant-appellants.*

*Zaytoun Law Firm, PLLC, by Matthew D. Ballew; and Ferguson
Stein Chambers Gresham & Sumter, P.A., by Adam Stein; for
North Carolina Advocates for Justice, amicus curiae.*

*Carruthers & Roth, P.A., by Norman F. Klick, Jr. and Robert N.
Young, for North Carolina Association of Defense Attorneys,
amicus curiae.*

MARTIN, Justice.

MOORE v. PROPER

[366 N.C. 25 (2012)]

This suit arises from plaintiff's visit to the dentist for a routine tooth extraction, which plaintiff alleges resulted in a broken jaw. The trial court granted defendants' motions for summary judgment "because Plaintiff failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure in that no reasonable person would have expected Dr. Joseph Dunn to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence." The sole question presented by this case is whether the Court of Appeals properly reversed the trial court order dismissing plaintiff's malpractice claim for failure to comply with N.C.G.S. § 1A-1, Rule 9(j). Because we find that plaintiff's proffered expert witness could have been "reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence," as required by Rule 9(j)(1) of the North Carolina Rules of Civil Procedure, we affirm the Court of Appeals. We need not address any other issues raised by the parties.

On 16 January 2006, plaintiff went to the dental office of Dr. Shaun O'Hearn in Asheville, North Carolina, complaining of a toothache. Plaintiff was seen by Dr. Daniel H. Proper. At plaintiff's request, Dr. Proper performed a tooth extraction. Plaintiff alleges that Dr. Proper fractured her jaw during the routine extraction, discharged her from his care without advising her of the fracture, failed to provide appropriate care following the fracture, and ignored her efforts to seek his assistance in treating her injury.

On 5 March 2009, plaintiff filed a complaint asserting a claim for dental malpractice, naming Daniel H. Proper; Shaun O'Hearn; Dr. Shaun O'Hearn, DDS, P.A.; and Affordable Care, Inc. as defendants. The complaint asserted that defendants were negligent in the performance of her tooth extraction and in failing to provide follow-up care. Plaintiff claimed that defendants' actions and inactions constituted a breach of the standard of care for dental professionals. The complaint included a Rule 9(j) certification stating:

> The medical care in this case has been reviewed by Dr. Joseph C. Dunn, who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care provided by the Defendants did not comply with the applicable standard of care.

In response to plaintiff's complaint, defendants filed answers denying all allegations of negligence and breach of the standard of care. Defendants further asserted as an affirmative defense that plaintiff failed to comply with Rule 9(j).

MOORE v. PROPER

[366 N.C. 25 (2012)]

Pursuant to the discovery scheduling order issued by the trial court, plaintiff submitted an expert witness designation identifying Dr. Joseph C. Dunn as her only expert witness and summarizing his qualifications. Dr. Dunn completed his undergraduate work at the University of North Carolina at Chapel Hill in 1966. He completed dental school at the University of Louisville School of Dentistry in 1970. From 1970 to 1973 Dr. Dunn served in the Dental Corps of the United States Navy. Following his military service, Dr. Dunn practiced dentistry in Asheville from 1973 until his retirement from full-time practice in 1997. The expert witness designation stated that Dr. Dunn would testify that plaintiff

> was not treated in accordance with the expected standard of care for treatment by a General Dentist in North Carolina in that she was not advised of the risks of a fractured jaw occurring from any treatment which was to be afforded by Dr. Proper, Dr. Proper did not take any steps to prevent the fracture of the jaw and he failed to provide for her proper follow up care after she experienced pain as a result of the extraction.

Defendants elicited more information about Dr. Dunn through interrogatories and a deposition. Discovery revealed that after his retirement from full-time clinical practice, Dr. Dunn served as director of the clinic at the local health department from 1998 to 2000. During his time at the clinic, Dr. Dunn performed "a lot of oral surger[ies]," including "a lot of extractions." Dr. Dunn maintained his license to practice general dentistry following his retirement, which required him to participate in continuing education courses each year. Since retiring, including the year preceding the alleged injury, Dr. Dunn practiced general dentistry on a fill-in basis, usually for dentists in the Asheville area who were ill. When defendants' attorney asked how many days Dr. Dunn had filled in between January 2005 and January 2006, Dr. Dunn at first estimated thirty days, though he stated that he was not sure because it was a number of years earlier. However, Dr. Dunn subsequently testified that he filled in for a dentist on a full-time basis for approximately two and one-half months, which he thought was during the same time period. Responding to another question, Dr. Dunn stated that one-hundred percent of his time practicing general dentistry on a fill-in basis constituted active clinical practice. Defendants' attorney then rephrased the question to ask what percentage of time Dr. Dunn spent working in the active clinical practice of dentistry, assuming an eight-hour

work day with a four-day work week, to which Dr. Dunn responded, "[L]ess than five percent, I guess." Dr. Dunn repeatedly explained his uncertainty, stating that it was difficult "to nail down percentages" and "[t]hat is just a thrown out number." Dr. Dunn did not spend any time teaching, researching, performing administrative tasks, or consulting in the field of dentistry. He testified that he spent a lot of time away from the dental profession serving on the city council, running for mayor, and enjoying time with his grandchildren.

Following the deposition, defendants filed motions for summary judgment under Rule 9(j). A hearing on the motions was scheduled for 9 August 2010. Before the hearing, on 6 August 2010, plaintiff filed a motion to qualify Dr. Dunn as an expert witness under Rule 702(e). On 9 August 2010, Dr. Dunn filed an affidavit purporting to clarify his deposition testimony, asserting that he was engaged in active clinical practice one hundred percent of his professional time between January 2005 and January 2006.

On 20 August 2010, the trial court entered an order granting defendants' motions for summary judgment and dismissing plaintiff's case for failure to comply with Rule 9(j). The order also denied plaintiff's motion to qualify Dr. Dunn under Rule 702(e), which allows expert qualification under extraordinary circumstances. N.C.G.S. § 8C-1, Rule 702(e) (2009). The order contained no written findings of fact. In response to plaintiff's motion for relief from summary judgment, the trial court filed a subsequent order on 21 September 2010 denying plaintiff's requested relief. Although the trial court stated in its August 2010 order that "no reasonable person would have expected Dr. Joseph Dunn to qualify as an expert witness under Rule 702," neither order made a determination as to whether Dr. Dunn *actually* qualified as a witness under Rule 702(b).

On appeal, a divided panel of the Court of Appeals reversed the trial court, concluding that Dr. Dunn could have been reasonably expected to qualify under Rule 702 as required by Rule 9(j)(1) and (2). *Moore v. Proper*, — N.C. App. —, —, 715 S.E.2d 586, 590-91 (2011). The Court of Appeals majority expressly stated that it was not ruling on whether Dr. Dunn would ultimately qualify as an expert witness under Rule 702. *Id.* at —, 715 S.E.2d at 590-91. Because the trial court made no written findings of fact, the Court of Appeals majority construed the factual evidence in the light most favorable to the nonmoving party and reviewed the ultimate conclusions of law de novo.

*Id.* at ——, ——, 715 S.E.2d at 590, 592. The dissenting opinion stated that plaintiff did not fulfill the requirements of Rule 9(j)(2) because she did not file a Rule 702(e) motion with the complaint. *Id.* at ——, 715 S.E.2d at 593 (Stephens, J., dissenting). The dissenting opinion further stated that plaintiff could not fulfill the requirements of Rule 9(j)(1) because, with the exercise of reasonable diligence, plaintiff could not reasonably expect Dr. Dunn to qualify as an expert as he neither maintained an active clinical practice nor spent a majority of his professional time engaged in active clinical dentistry. *Id.* at ——, 715 S.E.2d at 593-96.

The outcome of this case hinges on the interaction between N.C.G.S. § 1A-1, Rule 9(j) and N.C.G.S. § 8C-1, Rule 702(b). The relevant parts of Rule 9(j) provide:

> (j) *Medical malpractice.*——Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
>
> > (1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
> >
> > (2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
> >
> > (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C.G.S. § 1A-1, Rule 9(j) (2009).[1]

Rule 702(b) provides, in pertinent part:

> (b) In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate

---

1. Rule 9(j) was amended in 2011; however, the general requirements remain substantially unchanged.

standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:

. . . .

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

> a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

> b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

N.C.G.S. § 8C-1, Rule 702(b) (2009).

This Court has stated that "medical malpractice complaints have a distinct requirement of expert certification with which plaintiffs must comply." *Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002). Those complaints "receive strict consideration by the trial judge," and "[f]ailure to include the certification necessarily leads to dismissal." *Id.* When expert testimony is offered, including those cases in which the complaint contains a Rule 9(j) certification, the trial court will generally be "afforded wide latitude" in determining whether the proffered expert testimony will be admissible. *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984). Nonetheless, when a trial court's determination relies on statutory interpretation, our review is de novo because those matters of statutory interpretation necessarily present questions of law. *In re Foreclosure of Vogler Realty, Inc.*, —— N.C. ——, ——, 722 S.E.2d 459, 462 (2012).

MOORE v. PROPER

[366 N.C. 25 (2012)]

Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review *before* filing of the action. *Thigpen*, 355 N.C. at 203-04, 558 S.E.2d at 166. Rule 9(j) thus operates as a preliminary qualifier to "control pleadings" rather than to act as a general mechanism to exclude expert testimony. *See id.* Whether an expert will ultimately qualify to testify is controlled by Rule 702. The trial court has wide discretion to allow or exclude testimony under that rule. *Bullard*, 312 N.C. at 140, 322 S.E.2d at 376. However, the preliminary, gatekeeping question of whether a proffered expert witness is "reasonably expected to qualify as an expert witness under Rule 702" is a different inquiry from whether the expert *will actually* qualify under Rule 702. *See* N.C.G.S. § 1A-1, Rule 9(j)(1) (citation omitted). We "presum[e] that the legislature carefully chose each word used." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009). Therefore, to "give every word of the statute effect," we must ensure that the two questions are not collapsed into one. *See id.* Ignoring the term *reasonably expected* would thus contravene the manifest intent of the legislature. Accordingly, a trial court must analyze whether a plaintiff complied with Rule 9(j) by including a certification complying with the Rule before the court reaches the ultimate determination of whether the proffered expert witness actually qualifies under Rule 702.

Because Rule 9(j) requires certification at the time of filing that the necessary expert review has occurred, compliance or noncompliance with the Rule is determined at the time of filing. *See Thigpen*, 355 N.C. at 203-04, 558 S.E.2d at 166; *Sharpe v. Worland*, 147 N.C. App. 782, 783-84, 557 S.E.2d 110, 112 (2001), *disc. rev. denied*, 356 N.C. 615, 575 S.E.2d 27 (2002). The Court of Appeals has held that when conducting this analysis, a court should look at "the facts and circumstances known or those which should have been known to the pleader" at the time of filing. *Trapp v. Maccioli*, 129 N.C. App. 237, 241, 497 S.E.2d 708, 711, *disc. rev. denied*, 348 N.C. 509, 510 S.E.2d 672 (1998). We find this rule persuasive, as any reasonable belief must necessarily be based on the exercise of reasonable diligence under the circumstances. *See Fort Worth & Denver City Ry. Co. v. Hegwood*, 198 N.C. 309, 317, 151 S.E. 641, 645 (1930) (discussing knowledge in the context of an action for fraud). As a result, the Court of Appeals has correctly asserted that a complaint facially valid under Rule 9(j) may be dismissed if subsequent discovery establishes that the certification is not supported by the facts, *see Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238,

255, 677 S.E.2d 465, 477 (2009); *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008), at least to the extent that the exercise of reasonable diligence would have led the party to the understanding that its expectation was unreasonable. Therefore, to evaluate whether a party reasonably expected its proffered expert witness to qualify under Rule 702, the trial court must look to all the facts and circumstances that were known or should have been known by the party at the time of filing. *See Ewbank v. Lyman*, 170 N.C. 505, 508-09, 87 S.E. 348, 349-50 (1915) (discussing a party's inability to use willful ignorance of facts in the context of a fraud action to secure an advantage).

Though the party is not necessarily required to know all the information produced during discovery at the time of filing, the trial court will be able to glean much of what the party knew or should have known from subsequent discovery materials. *See Barringer*, 197 N.C. App. at 255, 677 S.E.2d at 477; *Ford*, 192 N.C. App. at 672, 666 S.E.2d at 157. But to the extent there are *reasonable* disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage of determining whether the party *reasonably expected* the expert witness to qualify under Rule 702. *See* N.C.G.S. § 1A-1, Rule 56 (2009) (stating that summary judgment is proper when there is no genuine issue of material fact for trial); *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) (stating that when considering a motion for summary judgment, a trial court must draw all inferences of fact in favor of the party opposing the motion). When the trial court determines that reliance on disputed or ambiguous forecasted evidence was not reasonable, the court must make written findings of fact to allow a reviewing appellate court to determine whether those findings are supported by competent evidence, whether the conclusions of law are supported by those findings, and, in turn, whether those conclusions support the trial court's ultimate determination. *See Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). We note that because the trial court is not generally permitted to make factual findings at the summary judgment stage, a finding that reliance on a fact or inference is not reasonable will occur only in the rare case in which no reasonable person would so rely. *See Forbis*, 361 N.C. at 523-24, 649 S.E.2d at 385.

Having described the meaning of the term *reasonably expected*, we turn to the requirements of Rule 702(b). Because Dr. Dunn did not claim that he taught in the field of clinical dentistry, we need only

MOORE v. PROPER

[366 N.C. 25 (2012)]

examine Rule 702(b)(2)(a). According to Rule 702(b)(2)(a), the proffered expert witness must, during the year immediately preceding the date of the injury, "have devoted a majority of his or her professional time to . . . [t]he active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered." N.C.G.S. § 8C-1, Rule 702(b)(2)(a). As recognized by the dissenting opinion in the Court of Appeals, this requirement can be broken into three relevant inquiries: (1) whether, during the year immediately preceding the incident, the proffered expert was in the same health profession as the party against whom or on whose behalf the testimony is offered;[2] (2) whether the expert was engaged in active clinical practice during that time period; and (3) whether the majority of the expert's professional time was devoted to that active clinical practice. See Moore, —— N.C. App. at ——, 715 S.E.2d at 594 (Stephens, J., dissenting).

The first inquiry will rarely be at issue and does not warrant discussion here. The second inquiry requires that the expert have been engaged in active clinical practice in the year preceding the incident. N.C.G.S. § 8C-1, Rule 702(b)(2). As the dissent at the Court of Appeals noted, clinical means "actual experience in the observation and treatment of patients"—not activities simply relating to the health profession, such as administration or continuing education. Moore, —— N.C. App. at ——, 715 S.E.2d at 595 (Stephens, J., dissenting) (citations and quotation marks omitted). A continuum exists between active and inactive clinical practice. On the one hand, there is inactive practice, an extreme example of which would be a professional performing one hour of clinical practice per year. On the other hand, there is active practice, an extreme example of which would be a full-time practitioner devoting eighty hours to clinical practice each week. Whether a professional's clinical practice is considered active during the relevant time period will necessarily be decided on a case-by-case basis considering, among other things, the total number of hours engaged in clinical practice, the type of work the professional is performing, and the regularity or intermittent nature of that practice. No one factor is likely to be determinative. Instead, the court must look to the totality of the circumstances when making this determination.

---

2. It is important to note that if the party against whom or on whose behalf the testimony is offered is a specialist, the Rule requires that the proffered expert witness be in the same or similar specialty. N.C.G.S. § 8C-1, Rule 702(b)(2)(a). Because that part of the Rule is not relevant to this case, it will not be discussed.

Having defined active clinical practice, we now examine the third inquiry—whether the professional's active clinical practice constituted the majority of his or her professional time during the year in question. When referring to the expert witness, Rule 702 states that the court should look to "*his or her* professional time." N.C.G.S. § 8C-1, Rule 702(b)(2). Therefore, *professional time* is the professional's *actual* time spent engaged in the profession of which he or she is being proffered as an expert. This time may include time spent in clinical practice, administration, continuing education, or any other capacity related to the field—necessarily excluding time spent outside the profession. *See, e.g., Cornett v. Watauga Surgical Grp.*, 194 N.C. App. 490, 494-95, 669 S.E.2d 805, 808 (2008) (analyzing the actual work week of the proffered expert witness). Using the aggregate time spent in the profession, the trial court must determine the proportion of that time during which the proffered expert was engaged in active clinical practice,[3] as defined above, and whether this time constituted at least a majority of his or her total professional time. Whereas the second inquiry is concerned with quantity and quality, this third inquiry is concerned with proportionality. *See* N.C.G.S. § 8C-1, Rule 702(b)(2). Having considered these three inquiries, the trial court then must determine whether it was reasonable for the plaintiff to expect the proffered expert to qualify under Rule 702, based on what the plaintiff knew or should have known at the time of filing the complaint. *See id.* § 1A-1, Rule 9(j).

The interaction between the second and third inquiries prevents absurd results. For instance, a professional likely would not qualify under Rule 702(b) if he or she spent one hundred percent of his or her professional time in clinical practice but practiced only ten hours during the relevant year. Similarly, a professional who spent eighty hours per week in the profession as an administrator but very little time performing clinical work likely would not qualify under Rule 702(b). In both cases, the professional would fail the second prong by not having engaged in an *active* clinical practice. At the same time, the interaction between these inquiries is meant to prevent absurd outcomes in which practitioners who are familiar with the local standard of care are unable to qualify.

We now turn to the facts of this case. Because the trial court dismissed the action for failure to comply with Rule 9(j), we need only consider the preliminary matter of whether Dr. Dunn was *reasonably*

---

3. We note that if the proffered expert witness instructed students, that time would also be included under Rule 702(b)(2)(b).

*expected* to qualify under Rule 702(b) based on the facts and circumstances that were known or should have been known by plaintiff at the time of filing her complaint. *See id.*, Rule 9(j)(1). Because the trial court made no written findings of fact, we assume that any disputes or ambiguities in the factual record were at least reasonable and construe them in favor of plaintiff, the nonmoving party, at this stage of the litigation. We do not consider, or in any way express an opinion on, whether Dr. Dunn would *actually* qualify as an expert witness under Rule 702(b), leaving that determination to the discretion of the trial court, subject to appellate review. *See Bullard*, 312 N.C. at 140, 322 S.E.2d at 376.

At the time of filing, plaintiff knew or should have known that Dr. Dunn was a licensed dentist with over thirty-five years of full-time experience. During that period, he served as a dentist in the United States Navy and then spent the remainder of his career practicing general dentistry in Asheville. Following his retirement from full-time practice, he continued to perform clinical dentistry as director of a local clinic. To maintain his license to practice dentistry, Dr. Dunn participated in required continuing education courses each year, which would give him at least some degree of insight into the current standard of care for his profession. Plaintiff also knew that since Dr. Dunn's retirement, he had continued to practice general clinical dentistry on a fill-in basis. The extent of Dr. Dunn's fill-in work from January 2005 to January 2006 was somewhat unclear. Dr. Dunn's deposition testimony revealed that during that one-year period he could have practiced as few as thirty days, or even more than two and one-half months when he filled in full time for a friend. Based on that conflicting information, it was at least reasonable to infer that Dr. Dunn engaged in fairly regular clinical dental practice for a substantial number of hours, the totality of which was reasonably likely to amount to active clinical practice. Additionally, all of Dr. Dunn's time in the dental profession was spent engaged in clinical practice.[4] Because activities completely unrelated to dentistry, such as running for mayor, are not included as part of Dr. Dunn's professional time, it was thus reasonable for plaintiff to infer that Dr. Dunn had devoted a majority of his professional time to the active clinical practice of dentistry. As a result, we can conclude that, at the time of filing, plaintiff

4. Dr. Dunn stated in his deposition testimony that he spent one hundred percent of the time during which he performed fill-in work practicing general dentistry. Therefore, we need not consider whether Dr. Dunn's affidavit was a clarifying affidavit and whether it was properly before the trial court.

reasonably expected that Dr. Dunn devoted a majority of his profes-
sional time to the active clinical practice of dentistry during the
relevant time period. Thus, plaintiff's complaint satisfied the require-
ments of Rule 9(j)(1), because she reasonably expected Dr. Dunn to
qualify as an expert witness under Rule 702(b)(2). Again, we empha-
size that we are merely deciding the preliminary issue of whether the
complaint satisfied the Rule 9(j) certification requirement, and we in
no way express an opinion as to whether Dr. Dunn would qualify as
an expert witness under Rule 702(b). We note that, having satisfied
the Rule 9(j) pleading requirements, plaintiff has survived the
pleadings stage of her lawsuit and may, at the trial court's discretion,
be permitted to amend the pleadings and proffer another expert if Dr.
Dunn fails to qualify under Rule 702 at trial or under a pretrial ruling
on a motion *in limine*. *See* N.C.G.S. § 1A-1, Rules 15, 26(f), (f1) (2009).
In light of this holding, we need not consider any other arguments
asserted by the parties.

For the foregoing reasons, plaintiff has satisfied the preliminary
requirements of Rule 9(j). Accordingly, we affirm the ruling of the
Court of Appeals on that issue and remand to that court for further
remand to the trial court for additional proceedings not inconsistent
with this opinion.

AFFIRMED IN PART AND REMANDED; DISCRETIONARY
REVIEW IMPROVIDENTLY ALLOWED.

Justice NEWBY concurring in part and concurring in the result.

Rule 9(j)(1) of the North Carolina Rules of Civil Procedure
requires a plaintiff to have a person who is "reasonably expected" to
qualify as an expert under Rule 702 of the North Carolina Rules of
Evidence review the medical care at issue prior to the filing of the
complaint. N.C.G.S. § 1A-1, Rule 9(j)(1) (2009). Plaintiff's proffered
expert in the case *sub judice* cannot be "reasonably expected" to
qualify as an expert under Rule 702 as this Court articulates the
meaning of Rule 702 today. However, because plaintiff did not have
the benefit of this Court's interpretation of Rule 702 at the time she
filed her complaint in this matter, I believe that her complaint should
not be subject to dismissal for a violation of Rule 9(j)(1). Accordingly,
I concur in the result that her complaint is reinstated.

Our General Assembly added Rule 9(j) to our Rules of Civil
Procedure and the relevant provision of Rule 702 to our Rules of
Evidence in a 1995 session law designed "to prevent frivolous med-

ical malpractice actions." Act of June 20, 1995, ch. 309, 1995 N.C. Sess. Laws 611, 611. The General Assembly essentially imposed two additional requirements on those seeking to pursue a medical malpractice action. *Id.* First, the legislature mandated that an expert witness must review the conduct at issue and be willing to testify at trial that it amounts to malpractice before a lawsuit may be filed. Ch. 309, sec. 2, 1995 N.C. Sess. Laws at 613. Second, the legislature limited the pool of appropriate experts to those who spend most of their time in the profession teaching or practicing. *Id.*, sec. 1, at 611-13. With this second requirement the General Assembly wanted to ensure that experts would be "qualified practitioners of a competence similar to those of the practitioners who are the object of the suit" and "to eliminate the use of professional witnesses whose careers are dedicated to testifying opposed to those practitioners who practice medicine." Minutes, *Meeting on H. 636 & H. 730 Before the House Select Comm. on Tort Reform*, 1995 Reg. Sess. (Apr. 19, 1995) [hereinafter *Minutes*] (comments by Rep. Charles B. Neely, Jr., Member, House Select Comm. on Tort Reform). Those reasons are behind similar requirements in other jurisdictions. *E.g.*, *Seisinger v. Siebel*, 220 Ariz. 85, 90, 203 P.3d 483, 488 (2009) (en banc) (observing a legislative desire to prevent retired physicians from testifying against practicing physicians); *McDougall v. Schanz*, 461 Mich. 15, 25 n.9, 597 N.W.2d 148, 153 n.9 (1999) (noting a legislative intention to exclude "hired gun" expert witnesses, those "who travel the country routinely testifying" (citation and internal quotation marks omitted)).

Rule 9(j) of our Rules of Civil Procedure prevents the filing of a medical malpractice action without the medical care at issue first being reviewed by an appropriate expert. *Thigpen v. Ngo*, 355 N.C. 198, 203-04, 558 S.E.2d 162, 166 (2002). Rule 9(j)(1), the portion of the rule at issue here, requires a medical malpractice complaint to assert that the medical care at issue has "been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." N.C.G.S. § 1A-1, Rule 9(j)(1). A medical malpractice complaint without this statement will be dismissed. *Thigpen*, 355 N.C. at 202, 558 S.E.2d at 165. Further, because this rule is designed to prevent complaints regarding care that has not been reviewed by an appropriate expert, even complaints containing a Rule 9(j) statement will be dismissed if the statement was unreasonably included. *See, e.g., Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 255, 677 S.E.2d 465, 477 (2009).

MOORE v. PROPER

[366 N.C. 25 (2012)]

Rule 702 of our Rules of Evidence provides that only certain health care providers may serve as expert witnesses in medical malpractice cases. Generally speaking, any person may be an expert witness if his or her "knowledge, skill, experience, training, or education" would be helpful to the jury. N.C.G.S. § 8C-1, Rule 702(a) (2009); *State v. Smith*, 221 N.C. 278, 288, 20 S.E.2d 313, 319 (1942) (explaining that whether a proffered expert witness is competent to testify depends not "upon the fact that he belongs to a certain profession to which opinion evidence of that character is necessarily confined, but upon a principle that must lie behind the competency of all opinion testimony—the fact that the witness has special experience in matters of the kind, and his conclusions may, therefore, be helpful to the less experienced jury"). However, Rule 702(b)(2)(a), the portion of that rule at issue here, provides that in a medical malpractice action an expert witness must be "a licensed health care provider" who "[d]uring the year immediately preceding the date of the occurrence that is the basis for the action . . . devoted a majority of his or her professional time to . . . [t]he active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered." N.C.G.S. § 8C-1, Rule 702(b)(2)(a) (2009).[5] This mandate serves as a limitation on the general rule regarding who may be an expert witness. Accordingly, an individual may possess the "knowledge, skill, experience, training, or education," *id.* Rule 702(a), that would enable him to serve as an expert in a medical malpractice action but be unable to actually qualify as an expert because of his inability to meet one or more of the requirements of Rule 702(b)(2)(a), *see, e.g., Seisinger*, 220 Ariz. at 90, 203 P.3d at 488 (explaining that a physician who has not recently practiced may "remain[ ] qualified through 'knowledge, skill, experience, training, or education' " to testify regarding a standard of care that has not materially changed since he left practice but nonetheless be prohibited from serving as an expert by a similar statute).

The majority opinion interprets Rule 702(b)(2)(a) to have three basic requirements. First, the proffered expert must be "in the same health profession as the party against whom or on whose behalf" he intends to testify "during the year immediately preceding the incident." The majority opinion does not elaborate on what it means to be "in the same health profession" but assures that requirement "will

---

5. Of course there are other activities with which an individual may fill his or her professional time. *See, e.g.,* N.C.G.S. § 8C-1, Rule 702(b)(2)(b). Those are not, however, at issue in this case.

rarely be at issue and does not warrant discussion here." Perhaps it is within this statement the majority opinion contemplates Rule 702(b)'s mandate that the proffered witness be "a licensed health care provider in this State or another state." Second, the proffered expert must have "engaged in active clinical practice during that time period." The majority opinion defines the word "clinical" as " 'actual experience in the observation and treatment of patients' " and states that a "continuum exists between active and inactive clinical practice." Whether an individual's practice is "active" depends upon a number of circumstances, including the amount of time devoted to it, the type of work being performed, and the regularity of the practice, with no single factor controlling. Third, a majority of the proffered expert's "professional time" must have been "devoted to that active clinical practice." This requirement is satisfied if more than half of the time the proffered expert spends "engaged in the profession of which he or she is being proffered as an expert" is devoted to clinical practice.

I agree with the majority opinion's interpretation of Rule 702 in this case. The requirement that the proffered expert witness is in the "same health profession" as the one for or against whom he intends to testify is consistent with the plain language of the rule. *See* N.C.G.S. § 8C-1, Rule 702(b)(2). Additionally, the requirement that a proffered expert spend a majority of "*his or her*," as opposed to some hypothetical individual's, "*professional* time," as opposed to personal time, engaged in active clinical practice is consistent with the text of the rule. *See id.* Rule 702(b)(2)(a) (emphases added). That requirement also preserves the balance struck by the legislature that prevents the use of "hired gun" expert witnesses but nonetheless allows an individual who engages in active clinical practice on a part-time basis possibly to qualify as an expert. *Minutes* (comments by Rep. Neely).

Perhaps most importantly, by recognizing that the word "active" modifies the phrase "clinical practice," the majority opinion realizes the legislature's intention to have qualified practitioners testifying in medical malpractice cases. *See* N.C.G.S. § 8C-1, Rule 702(b)(2)(a). As the majority opinion explains, ascertaining whether a proffered expert's clinical practice is "active" depends on a number of factors, none of which is likely to be dispositive. These factors include the amount of time that individual spends observing and treating patients and the frequency and regularity with which the proffered expert engages in those activities. The more infrequently or intermittently the proffered expert observes and treats patients, the more likely that

individual does not qualify as an expert under Rule 702(b)(2)(a). The most important factor in this inquiry is the type of work the individual is performing. An individual who is not performing the activities of other clinical practitioners of the same health profession likely will not qualify as an expert. For example, an individual who observes or diagnoses patients but who does not regularly perform the various treatments done by other members of that health profession likely would not qualify as an expert under this rule. Allowing an individual who does not function as do the vast majority of the other members of the same health profession to qualify as an expert under this rule would contravene the General Assembly's intention to ensure that experts in medical malpractice cases would be "qualified practitioners of a competence similar to those of the practitioners who are the object of the suit." *Minutes* (comments by Rep. Neely).

When ascertaining whether Rule 9(j) is satisfied a reviewing court must determine whether one who is "reasonably expected" to qualify as an expert under Rule 702 reviewed the medical care at issue prior to filing. Whether that individual actually qualifies under Rule 702 is a different inquiry, as the majority opinion notes. Because Rule 9(j) is a pleading rule, focusing on and regulating the filing of a complaint in a medical malpractice action, *Thigpen*, 355 N.C. at 203, 558 S.E.2d at 166, compliance is measured by what was known or through the exercise of reasonable diligence should have been known by the pleader at the time the medical malpractice complaint was filed, *Trapp v. Maccioli*, 129 N.C. App. 237, 241, 497 S.E.2d 708, 711, *disc. rev. denied*, 348 N.C. 509, 510 S.E.2d 672 (1998). As the majority opinion explains, a court may look to subsequent discovery materials to ascertain what was known and what reasonably should have been known at the time of filing, but should view reasonable factual ambiguities in favor of the plaintiff. With these considerations in mind I now turn to the relevant inquiry in the case *sub judice*.

At the time of filing the complaint plaintiff knew or should have known that Dr. Dunn practiced dentistry an insubstantial number of days in the year preceding the alleged malpractice. Dr. Dunn retired from the general practice of dentistry in July 1997, some twelve years before the complaint was filed and some nine years prior to the conduct at issue in the case. In the year preceding the alleged malpractice Dr. Dunn practiced dentistry on a "fill-in" basis. As the majority opinion notes, the number of days he actually "filled in" for another dentist in that year is unclear. Dr. Dunn estimated at one point he worked "maybe" thirty days that year but later stated that he

"covered for one gentleman . . . for three—almost two and one-half months" in the "general neighborhood" of the year preceding the alleged malpractice in this case. While the exercise of reasonable diligence requires a determination whether this work actually occurred during the relevant year, this explanation was given prior to our decision today. Accordingly, I, like the majority opinion, will treat this as a reasonable factual ambiguity and assume Dr. Dunn filled in for more than two and one-half months during the year preceding the alleged malpractice. That figure amounts to roughly twenty-five percent of the relevant time period.

Dr. Dunn engaged in the practice of dentistry rarely and with little regularity during the period from January 2005 to January 2006, stating at his deposition that he did "fill-in work for dentists who are on vacation or ill." Dr. Dunn explained that he was "not in the business of doing" fill-in work and did not "earn[ ] a living doing it." Instead, he explained that he had a group of "about five or six guys that [he is] friends with" for whom he would perform this fill-in work, but that he does not "want to do anymore than [he has] to." The days where Dr. Dunn performs this work "are scattered" and "just here and there." In fact, there are times when Dr. Dunn will go "several months without filling in." Dr. Dunn seemed to indicate that some of his work occurred when dentists vacationed in the summer but explained that more of his work tended to occur in the winter months "when [dentists would] get sick," which by its nature is irregular and unanticipated. These facts indicate that Dr. Dunn's work in the dental profession is sporadic and seldom.

Most importantly, Dr. Dunn performed very few of the activities undertaken by practitioners of general dentistry. In his deposition Dr. Dunn described general dentistry as involving "endodontics, oral surgery, [and] restorative dentistry." He elaborated, stating these include such activities as performing "root canals," "fix[ing] teeth to crown them, fill them or whatever," "taking out teeth," executing "soft tissue surgeries," and undertaking "apicoectomies." By contrast, Dr. Dunn described his fill-in work as "just routine dental care, emergency treatment, whatever comes down the road that you need to do." He explained that when he is filling in he "is mostly checking hygiene patients" and to a lesser extent he "provide[d] emergency dental care[ ] and refer[red] patients that may need to go to an orthodontist." He stated that he would not perform much "clinical dentistry," that is, treatment, mainly because "patients you are filling in for are used to a certain dentist" and "[t]hey don't feel comfortable with a

stranger coming in there and working." Dr. Dunn clarified that if a patient was "comfortable with [him] then [he would] do the work" but acknowledged that "most . . . patients don't want a dentist they don't know taking out teeth or doing a lot of stuff." Given his description both of general dentistry and his own fill-in work it seems Dr. Dunn's dental activities are not entirely consistent with the activities of general dentistry practitioners.

Dr. Dunn did not engage in "active clinical practice" during the period from January 2005 to January 2006. Resolving factual ambiguities in favor of plaintiff, Dr. Dunn spent approximately twenty-five percent of the work days in the year engaged in the clinical practice of dentistry. Moreover, because when he worked largely depended on the illness or vacation of others, Dr. Dunn did not practice with much consistency or frequency. Finally, Dr. Dunn acknowledged that he spent most of his time in clinical practice checking hygiene patients and did not undertake most of the treatments and procedures normally performed by dental clinicians. Considering these factors together, it is unreasonable to expect Dr. Dunn to be deemed to have engaged in the active clinical practice of dentistry during the relevant time period. And, as a result, he is not "reasonably expected" to qualify as an expert witness under Rule 702.

Nonetheless, the majority opinion concludes that Dr. Dunn is reasonably expected to qualify as an expert under Rule 702. The majority opinion relies principally on Dr. Dunn's more than thirty-five years of experience as a general dentist, his current license to practice, and the number of days he filled in for other dentists during the period from January 2005 to January 2006 to support its conclusion. Also, the majority opinion notes that "all of Dr. Dunn's time in the dental profession was spent engaged in clinical practice." While certainly implicating Rule 702's third requirement that a proffered expert spend a majority of his professional time in clinical practice, this observation is not particularly relevant to Rule 702's second requirement, whether the proffered expert engaged in *active* clinical practice. Moreover, Dr. Dunn's current license is irrelevant to whether he engaged in active clinical practice. Rule 702 explicitly requires a proffered expert witness to be licensed in order to testify as an expert in a medical malpractice action. N.C.G.S. § 8C-1, Rule 702(b). Finally, while Dr. Dunn's education and experience practicing general dentistry in the United States Navy and in Asheville, North Carolina, are certainly impressive and instructive as to whether he is in a better position than the jury to understand the applicable stan-

dard of care, a requirement of Rule 702(a), events prior to the year preceding the alleged malpractice simply are not relevant to the inquiry under Rule 702(b)(2)(a). Accordingly, the pertinent factual circumstance supporting the majority opinion's conclusion that Dr. Dunn engaged in "active clinical practice" during the year preceding the alleged malpractice is the number of days Dr. Dunn spent filling in. In my view, that simply is not enough.

Nonetheless, plaintiff in this case did not have the benefit of today's decision when choosing an expert witness. Accordingly, while I disagree with the majority opinion's conclusion that Dr. Dunn satisfies Rule 9(j)'s standard of being "reasonably expected" to qualify as an expert under Rule 702, I concur in the result that plaintiff's complaint is reinstated.