COLLINS, Judge.
 

 *190
 
 Plaintiff Donna Preston, decedent William M. Preston's widow and estate representative, appeals an order dismissing her wrongful death action alleging medical malpractice against Defendant Assadollah Movahed, M.D.
 
 [1]
 
 After a compliance hearing, the trial court concluded
 
 *191
 
 the facially valid Rule 9(j) pre-lawsuit medical expert review certification in Plaintiff's medical malpractice complaint was factually unsupported when it was filed, which was two days before the expiration of the applicable statute of limitations period. Therefore, the trial court granted Defendant's motion to dismiss the complaint for substantive Rule 9(j) noncompliance.
 

 On appeal, Plaintiff contends the trial court erred by dismissing her complaint because the certificate substantively complied with Rule 9(j). We disagree. Because competent evidence supported the trial court's factual findings, which in turn supported its legal conclusions and ultimate decision that the Rule 9(j) certificate was factually unsupported at the time Plaintiff had filed her complaint and before the statute of limitations period had expired, we affirm the trial court's order dismissing her complaint for substantive Rule 9(j) noncompliance.
 

 I. Procedural History and Factual Background
 

 Plaintiff's complaint and later medical expert deposition testimony reveals the following facts: Around 8:30 a.m. on 3 February 2014, William M. Preston (Preston) presented to Vidant Medical Center's emergency department complaining of chest pain and shortness of breath. Preston's emergency room electrocardiogram (EKG) test revealed abnormalities consistent with myocardial ischemia, a condition where not enough blood reaches the heart. That evening, Preston was admitted to the hospital's observation unit under the care of attending physician Pranitha Prodduturvar, M.D. After Dr. Prodduturvar examined Preston, she ordered a cardiac workup including,
 
 inter alia
 
 , a nuclear stress test (NST).
 

 Around noon the next day, hospital providers administered Preston's NST. An NST involves injecting a patient with radioactive material and subjecting him to cardiovascular exercise in order to obtain nuclear images of the heart revealing blood flow while under stress and at rest. Dr. Movahed, the hospital's attending nuclear cardiologist, who was neither acting as a formal cardiology consult nor had personally examined Preston, was assigned to interpret Preston's NST results. Interpreting the results of an NST involves
 
 *659
 
 assessing the treadmill stress test and EKG tracings taken of the heart, in conjunction with analyzing the nuclear cardiology images.
 

 Following the test, Dr. Movahed orally reported his interpretation of Preston's NST to cardiology fellow Deepak Joshi, M.D., with instructions for Dr. Joshi to communicate his findings to Preston's then-attending physician, Neha Doctor, M.D. In Dr. Movahed's later-dictated report, he noted "a perfusion defect in [Preston's] heart ... might be due to significant gas
 
 *192
 
 in the stomach, but ... he could not rule out ischemia as a possible cause of the abnormality." Dr. Movahed also suggested, based upon Preston's abnormal NST, "[o]ne may consider a [coronary computed tomography angiogram, also known as a] CTA," which is an additional cardiac test to evaluate suspected coronary artery disease.
 

 Subsequently, on 4 February 2014, attending physician Dr. Doctor personally examined Preston and ordered his discharge from the hospital. Preston was instructed to follow up with his primary care physician about ordering an MRI to assess potential neurological causes for his symptoms and was scheduled for an outpatient cardiology follow-up on 20 February 2014.
 

 On 6 February 2014, Preston was examined by his primary care physician, who ordered the MRI. On 10 February 2014, Preston returned to his primary care physician to discuss the MRI results, which revealed no neurological explanation for Preston's symptoms. On 13 February 2014, six days before his scheduled outpatient cardiology follow-up, Preston suffered a fatal heart attack in his home.
 

 On 25 November 2015, Plaintiff filed a wrongful death medical malpractice complaint against Dr. Prodduturvar and Dr. Doctor, and four medical entities associated with Vidant Medical Center (first complaint). Plaintiff alleged the physicians were medically negligent in their care of Preston during his admission to the hospital and their failure to order further immediate testing and medical treatment before he was discharged from the hospital. Neither Dr. Movahed nor Dr. Joshi were named in the first complaint.
 

 On 12 February 2016, two days before the applicable statute of limitations period expired, Plaintiff filed a second wrongful death medical malpractice complaint, this time naming Dr. Movahed and Dr. Joshi, and their employer, Pitt County Memorial Hospital, Incorporated, d/b/a Vidant Medical Center (second complaint). The second complaint asserted Dr. Movahed was negligent in that he
 

 a. Failed to accurately interpret and communicate the findings and significance of diagnostic tests performed on Mr. Preston;
 

 b. [F]ailed to adequately, appropriately and timely suggest and perform a full assessment and work-up to rule out life-threatening acute coronary artery disease for a patient at high risk for the disease, including, but not limited to, cardiac catheterization ;
 

 *193
 
 c. [F]ailed to recommend a cardiology consult for Mr. Preston prior to his discharge from Vidant Medical Center with acute chest pain;
 

 d. [F]ailed to conduct an adequate assessment of Mr. Preston's risk factors for coronary artery syndrome;
 

 e. [F]ailed to prescribe any treatment to Mr. Preston for possibility of acute coronary artery disease before discharging him from the hospital; [and]
 

 f. [F]ailed to comply with standards of practice among physicians and cardiolovascular [sic] disease specialists with the same or similar training and experience in Pitt County, North Carolina, or similar communities in 2014[.]
 

 The complaint also included the following Rule 9(j) certificate:
 

 the medical care of the defendant and all medical records pertaining to the alleged negligence of this defendant that are available to the plaintiff after reasonable inquiry have been reviewed before the filing of this complaint by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care.
 

 *660
 
 On 25 April 2016, Defendant filed his answer to the second complaint, denying all allegations of negligence and breach of the standard of care, and moving to dismiss Plaintiff's action,
 
 inter alia
 
 , "[i]f discovery indicates that Plaintiff did not comply with the requirements of Rule 9(j)[.]"
 

 On 9 August 2016, in response to Defendant's Rule 9(j) interrogatories, Plaintiff identified Stuart Toporoff, M.D., "a physician specializing in the area of cardiology," and Andy S. Pierce, M.D., "a physician specializing in the area of internal medicine and hospitalist care," as her Rule 9(j) pre-review medical experts. Attached to her response, Plaintiff included,
 
 inter alia
 
 , Dr. Toporoff's curriculum vitae and a Rule 9(j) pre-review medical expert affidavit signed by Dr. Toporoff.
 
 [2]
 
 In his affidavit, Dr. Toporoff stated he had "reviewed the medical records related to
 
 *194
 
 medical care provided to William Preston during his presentation with chest pain to Vidant Medical Center on February 3-4, 2014" and had "been provided a packet of information ... about the training and experience of ... [Dr.] Movahed" and "the Answer of Defendant Neha Doctor, MD" to the first complaint. Based upon his review of these materials, Dr. Toporoff opined that the "medical care provided to William Preston during his admission to Vidant Medical Center ... for chest pain, failed to comply with the applicable standard of care for the evaluation of a patient with chest and arm pain who presented with Mr. Preston's signs, symptoms and medical history" and "expressed [his] willingness to testify to the above if called upon to do so."
 

 On 15 December 2016, Plaintiff submitted an expert witness designation, identifying her Rule 9(j) experts Dr. Toporoff and Dr. Pierce, as well as nuclear cardiologists Mark I. Travin, M.D., and Salvador Borges-Neto, M.D.
 

 On 23 March 2017, Defendant deposed Dr. Toporoff. During his deposition, Dr. Toporoff confirmed that Dr. Movahed's involvement in Preston's care was limited to interpreting his NST results. Dr. Toporoff also admitted that, as a non-nuclear cardiologist who never interpreted the results of an NST, he was incompetent to qualify as a nuclear cardiologist against Dr. Movahed or criticize his interpretation of the nuclear imaging component of Preston's NST. But, Dr. Toporoff testified that he felt qualified as a clinical cardiologist who interpreted EKG tracings when administering treadmill stress tests to patients and thus comfortable stating Dr. Movahed's interpretation of the EKG component of Preston's NST fell below the applicable standard of care. However, Dr. Toporoff further testified that, when initially consulted to review the case before Plaintiff filed her first lawsuit against the physicians, he told Plaintiff not to name Dr. Movahed because Dr. Toporoff refused to testify against him unless Plaintiff retained a nuclear cardiologist competent and willing to testify that Dr. Movahed's interpretation of the nuclear imaging component of Preston's NST fell below the applicable standard of care. As to what new information Dr. Toporoff reviewed in between the filings of the first and second lawsuit, he admitted that the only additional medical record was the nuclear images from Preston's NST, which he confirmed he was incompetent to interpret, and Dr. Doctor's pleading in response to the first lawsuit.
 

 On 16 June 2017, Defendant filed a second motion to dismiss Plaintiff's second complaint under North Carolina Civil Procedure Rules 12(b)(6), 9(j), and 41. In response, Plaintiff submitted a third affidavit from Dr. Toporoff signed 15 September 2017. In his third affidavit, Dr.
 
 *195
 
 Toporoff explained in greater detail the significance of Dr. Doctor's pleading in response to the first complaint, which Dr. Toporoff had reviewed prior to signing his second Rule 9(j) affidavit naming Dr. Movahed before Plaintiff filed the second complaint. Dr. Toporoff stated as follows:
 

 7) Based on the representation by Dr. Doctor in those documents of the following information: that Dr. Movahed's report was NOT available to her prior to Mr. Preston's discharge; that Dr. Movahed had
 
 *661
 
 specifically made recommendations to the hospitalist; and that Dr. Joshi communicated the results of the nuclear stress test with "cardiology's" recommendation for an outpatient CT angiogram, I informed [Plaintiff] I was willing to testify that Dr. Movahed and Dr. Joshi violated standards of care in their collaboration and treatment of Mr. Preston.
 

 8) My criticisms of Drs. Movahed and Joshi include: failures to interpret, diagnose, document and communicate to the ordering physician the presence of chest pain and ST wave depression changes during Mr. Preston's nuclear treadmill stress test that were consistent with ischemia; and failure to recommend an immediate cardiology consult for Mr. Preston prior to his discharge.
 

 On 18 September 2017, the trial court held a Rule 9(j) compliance hearing on Defendant's motion to dismiss Plaintiff's complaint. On 25 October 2017, the trial court entered an order, concluding in relevant part that Dr. Movahed's deposition testimony established the facially valid Rule 9(j) certificate in Plaintiff's second complaint was factually unsupported when filed, and that Plaintiff had failed to comply with Rule 9(j)'s substantive requirements before the applicable statute of limitations period had expired. Accordingly, the trial court granted Defendant's motion to dismiss Plaintiff's complaint for substantive Rule 9(j) noncompliance. Plaintiff appeals.
 

 II. Discussion
 

 On appeal, Plaintiff contends the trial court erred by granting Defendant's motion to dismiss her action for noncompliance with Rule 9(j) because (1) her complaint satisfied the purpose and substantive requirements underlying Rule 9(j) ; (2) the trial court erred by determining it was unreasonable for Plaintiff to expect Dr. Toporoff to qualify as an expert witness against Dr. Movahed; and (3) three of the trial court's twenty-seven factual findings supporting its ultimate ruling were not
 
 *196
 
 supported by competent evidence. Because Plaintiff's challenges to the trial court's factual findings inform our analysis as to whether her first two issues presented have merit, we first address Plaintiff's challenges to the evidentiary sufficiency of the trial court's factual findings.
 

 A. North Carolina Civil Procedure Rule 9(j)
 

 " Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review
 
 before
 
 filing of the action."
 
 Vaughan v. Mashburn
 
 , --- N.C. ----, ----,
 
 817 S.E.2d 370
 
 , 375 (2018) (quoting
 
 Moore v. Proper
 
 ,
 
 366 N.C. 25
 
 , 31,
 
 726 S.E.2d 812
 
 , 817 (2012) ). The Rule mandates that a medical malpractice complaint "shall be dismissed unless"
 

 [t]he pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence ... have been reviewed by a person [ (1) ] who is
 
 reasonably expected to qualify as an expert witness
 
 under Rule 702 of the Rules of Evidence and [ (2) ]
 
 who is willing to testify
 
 that the medical care did not comply with the applicable standard of care[.]
 

 N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2017) (emphases added). However, "a complaint facially valid under Rule 9(j) may be dismissed if subsequent discovery establishes that the certification is not supported by the facts, at least to the extent that the exercise of reasonable diligence would have led the party to the understanding that its expectation was unreasonable."
 
 Moore
 
 ,
 
 366 N.C. at 31-32
 
 ,
 
 726 S.E.2d at 817
 
 (internal citations omitted).
 

 "Because Rule 9(j) requires certification at the time of filing that the necessary expert review has occurred, compliance or noncompliance with the Rule is determined at the time of filing[,]"
 
 id.
 
 at 31,
 
 726 S.E.2d at 817
 
 ,
 
 366 N.C. 25
 
 (citations omitted), and "when conducting this analysis, a court should look at 'the facts and circumstances known or those which should have been known to the pleader' at the time of filing[,]"
 

 id.
 

 (quoting
 
 Trapp v. Maccioli
 
 ,
 
 129 N.C. App. 237
 
 , 241,
 
 497 S.E.2d 708
 
 , 711 (1998) ).
 

 B. Standard of Review
 

 We review
 
 de novo
 
 a trial court's dismissal of a medical malpractice complaint for substantive Rule 9(j) noncompliance.
 

 *662
 

 Estate of Wooden ex rel. Jones v. Hillcrest Convalescent Ctr., Inc.
 
 ,
 
 222 N.C. App. 396
 
 , 403,
 
 731 S.E.2d 500
 
 , 506 (2012) (citations omitted). Where, as here, "a trial court determines a Rule 9(j) certification is not supported by the facts, 'the court must make written findings of fact to allow a reviewing
 
 *197
 
 appellate court to determine whether those findings are supported by competent evidence, whether the conclusions of law are supported by those findings, and, in turn, whether those conclusions support the trial court's ultimate determination.' "
 

 Id.
 

 (quoting
 
 Moore
 
 ,
 
 366 N.C. at 32
 
 ,
 
 726 S.E.2d at
 
 818 ).
 

 Additionally, because Rule 9(j) imposes multiple threshold pleading requirements that must be satisfied to survive dismissal, each one must be factually supported in order to be substantively compliant with Rule 9(j). Thus, if subsequent discovery establishes a facially valid certificate has no factual support for one of Rule 9(j)'s strict pleading requirements, a medical malpractice complaint is properly dismissed for substantive Rule 9(j) noncompliance.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 McGuire v. Riedle
 
 ,
 
 190 N.C. App. 785
 
 , 788,
 
 661 S.E.2d 754
 
 , 758 (2008) (affirming dismissal for substantive Rule 9(j) noncompliance solely on the ground that the "[p]laintiff did not present the trial court with an expert who was 'willing to testify that the medical care did not comply with the applicable standard of care.' " (quoting N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) )).
 

 C. Sufficiency of Factual Findings
 

 The trial court here entered twenty-seven findings supporting its ultimate decision to dismiss Plaintiff's complaint for substantive Rule 9(j) noncompliance. In her brief, Plaintiff challenges only the evidentiary sufficiency of factual findings 22, 24, and 27, rendering the remaining twenty-four findings binding on appeal.
 
 Ingram v. Henderson Cty. Hosp. Corp., Inc.
 
 , --- N.C. App. ----, ----,
 
 815 S.E.2d 719
 
 , 733 (2018) (citation omitted). We thus first address the evidentiary sufficiency of each challenged finding, and then assess whether the trial court's findings supported its conclusions and ultimate decision.
 

 1. Factual Finding 22
 

 Plaintiff first challenges factual finding 22, which reads: "Dr. Toporoff ... admitted that Dr. Movahed's involvement was limited to the interpretation of the nuclear stress test that was performed on Mr. Preston." During his deposition, Dr. Toporoff specifically confirmed that "Dr. Movahed's involvement in this case is the interpretation of the nuclear stress test that was performed on Mr. Preston[.]" This exchange supplied competent evidence to support the finding.
 

 Plaintiff argues the finding was erroneous because "the nuclear stress test involves two parts: the exercise treadmill stress test and the nuclear heart images" and "Dr. Toporoff was critical of Dr. Movahed's interpretation of the ... exercise treadmill portion, which revealed
 
 *198
 
 issues with Mr. Preston's heart requiring immediate further testing." Plaintiff's explanation of the NST does not make the challenged finding erroneous, nor does it contradict or undermine the competent evidence supporting the finding. Moreover, "[t]he well-established rule is that findings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding."
 
 Scott v. Scott
 
 ,
 
 336 N.C. 284
 
 , 291,
 
 442 S.E.2d 493
 
 , 497 (1994) (citation omitted).
 

 2. Factual Finding 24
 

 Plaintiff next challenges factual finding 24, which reads: "Dr. Toporoff only agreed to testify in the Second Lawsuit if Plaintiff's counsel retained a nuclear cardiologist." She argues this finding was erroneous because Dr. Toporoff (1) opined in his Rule 9(j) affidavits that Preston's medical care failed to comply with the standard of care and "expressed [his] willingness to testify to the above if called upon to do so"; and (2) testified when deposed that, at the time he signed his second Rule 9(j) affidavit prior to the filing of the second lawsuit, he "felt comfortable saying that Dr. Movahed failed to meet the standard of care as to the interpretation of the exercise treadmill test."
 

 When deposed, Dr. Toporoff testified that during his initial pre-lawsuit review before
 
 *663
 
 Plaintiff filed her first complaint against the hospitalists, he said to Plaintiff that he would not add Dr. Movahed to the lawsuit unless she got another nuclear cardiologist to interpret the images because Dr. Toporoff "did not want to get into an across-the-table where [Dr. Movahed was] highly competent in that field on paper and [he] ha[d] no business criticizing his summaries." After Dr. Toporoff acknowledged he was unqualified to testify against Dr. Movahed as a nuclear cardiologist, he explained: "[T]hat's how [Dr. Movahed's] name got added later [to the second lawsuit]. I refused to be a nuclear cardiologist against [Dr. Movahed]." Later, when asked whether he wanted to change any answers to his prior testimony, Dr. Toporoff stated:
 

 At the beginning, I just wanted to make it clear, because I remember a conversation I had with [Plaintiff's attorney], that I would not testify against Dr. Movahed unless she came up with a nuclear cardiologist because I did not want to be across from him where he's talking about nuclear images and I have to say, I know nothing. And once we agreed that she would get somebody else, then I felt I could handle myself clinically.
 

 *199
 
 The above testimony, including Dr. Toporoff's testimony that "he would not testify against Dr. Movahed unless [Plaintiff] came up with a nuclear cardiologist" provides competent evidence directly supporting the trial court's challenged finding number 24 that "Dr. Toporoff only agreed to testify in the Second Lawsuit if Plaintiff's counsel retained a nuclear cardiologist." To the extent Plaintiff argues that Dr. Toporoff's Rule 9(j) affidavits or other deposition testimony may have supported a different finding, "findings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding."
 

 Id.
 

 (citation omitted). We overrule this argument.
 

 Although unnecessary to our resolution of this issue, we nonetheless address Plaintiff's argument that "Dr. Toporoff consistently and sufficiently indicated his ability to render opinions regarding the treadmill stress test and the communication failure of those results." To support this argument, Plaintiff emphasizes Dr. Toporoff's later deposition testimony in which he confirmed he "had opinions separate and apart from the NST images" and was "comfortable ... when [he] did the 9(j) affidavit[ ] ... saying that Dr. Movahed failed to meet the standard of care as it applies to a cardiologist interpreting a treadmill stress test [.]"
 

 Dr. Toporoff's statement that he "had opinions separate and apart from the NST images" was immediately followed by his confirmation that he "didn't feel as confident expressing those [opinions] until [he] had some kind ... of support for the NST images as well." Moreover, merely having an opinion does not indicate one's willingness to testify as to that opinion. Additionally, Dr. Toporoff's confirmation that he was "comfortable ... when [he] did the 9(j) affidavit ... saying that Dr. Movahed failed to meet the standard of care as it applies to a cardiologist interpreting a treadmill stress test" was not an unequivocal assertion that he was "willing to testify" against Dr. Movahed. Regardless of whether Dr. Toporoff had opinions or was comfortable saying something about Dr. Movahed regarding the treadmill-stress-test component of interpreting the NST, Dr. Toporoff's testimony considered contextually establishes that his
 
 willingness
 
 to testify against Dr. Movahed in any capacity was conditioned upon having the support of a nuclear cardiologist who was competent and willing to testify against Dr. Movahed as to the nuclear-imaging component.
 

 3. Factual Finding 27
 

 Plaintiff next challenges factual finding 27, which reads: "[A]s of the date the Second Lawsuit was filed, Plaintiff had no cardiologist
 
 *200
 
 competent or willing to testify against ... Dr. Movahed ...." Plaintiff argues this finding was unsupported because "[t]he record makes clear that Dr. Toporoff was able and willing to testify against Dr. Movahed, and ... was qualified to do so."
 

 The unchallenged findings establish that Dr. Toporoff was Plaintiff's only Rule 9(j) pre-lawsuit review cardiologist, and the two nuclear cardiologists were consulted months after the second lawsuit was filed and after
 
 *664
 
 the statute of limitations had expired. Having concluded above that Dr. Toporoff's testimony supported challenged factual finding 24-"Dr. Toporoff only agreed to testify in the Second Lawsuit if Plaintiff's counsel retained a nuclear cardiologist"-that finding, along with unchallenged factual finding 8 establishing that Plaintiff failed to retain a nuclear cardiologist until months after she filed the second lawsuit, support the part of challenged finding 27 that "as of the date the Second Lawsuit was filed, Plaintiff had no cardiologist ... willing to testify against ... Dr. Movahed ...."
 

 In light of our conclusion that competent evidence supported that part of the finding that no cardiologist was willing to testify against Dr. Movahed at the time Plaintiff filed her second lawsuit, we need not address the sufficiency of evidence supporting that part of the finding as to whether Dr. Toporoff was competent to testify in any capacity against Dr. Movahed.
 
 See
 

 Vaughan
 
 , --- N.C. at ----,
 
 817 S.E.2d at 375
 
 ("[R]ule [9(j) ] averts frivolous actions by precluding any filing in the first place by a plaintiff who is unable to procure an expert who
 
 both
 
 meets the appropriate qualifications and, after reviewing the medical care and available records, is willing to testify that the medical care at issue fell below the standard of care." (emphasis added)).
 

 D. Sufficiency of Legal Conclusions
 

 Having concluded challenged factual findings 22, 24, and the no cardiologist willing to testify portion of finding 27 were supported by competent evidence, our review is whether those findings and the trial court's remaining unchallenged findings supported its conclusions and ultimate decision to dismiss Plaintiff's complaint for substantive Rule 9(j) noncompliance.
 

 The trial court made the following relevant factual findings:
 

 2. ... Mr. Preston ... had a nuclear stress test ("NST") conducted.
 

 3. The NST was interpreted by an attending nuclear cardiologist ..., Dr. Movahed.
 

 *201
 
 ....
 

 8. On February 12, 2016, [Plaintiff] filed a second malpractice lawsuit ....
 

 ....
 

 10. This Second Lawsuit alleges that Dr. Movahed ... w[as] negligent in [his] care and treatment of Mr. Preston prior to his discharge from VMC.
 

 ....
 

 12. The Second Lawsuit ... contained a certification paragraph that was facially compliant with Rule 9(j)....
 

 13. ... Plaintiff identified two 9(j) expert witnesses: Dr. Stuart Toporoff, a non-nuclear cardiologist ..., and Dr. Andy Pierce, a hospitalist ....
 

 14. On December 15, 2016, Plaintiff formally designated her expert witnesses, which, in addition to Drs. Toporoff and Pierce, included two nuclear cardiologists, Dr. Mark Travin ... and Dr. Salvadore Borges-Neto ....
 

 15. Plaintiff does not contend, nor would the record support, that these two nuclear cardiologists were consulted with, or agreed to provide testimony, prior to the Plaintiff filing either of the two lawsuits.
 

 16. On March 31, 2017, Defendants deposed Dr. Pierce, who admitted that he is not a cardiologist and, therefore, is "not really the person to critique Movahed."
 

 ....
 

 19. On March 23, 2017, Defendants [deposed] Dr. Toporoff, a clinical cardiologist. Dr. Toporoff admitted that he is not a nuclear cardiologist, and has never interpreted nuclear stress tests.
 

 ....
 

 22. Dr. Toporoff ... admitted that Dr. Movahed's involvement was limited to the interpretation of the nuclear stress test that was performed on Mr. Preston.
 

 23. Dr. Toporoff ... testified that he had no business criticizing and did not feel competent criticizing Dr. Movahed's
 
 *202
 
 interpretation of the NST, and that he "would look like a fool trying to interpret the [NST] images." Dr. Toporoff further testified that he "would not testify against Dr. Movahed unless [Plaintiff's attorney] came up with a nuclear cardiologist [expert]."
 
 *665
 
 24. Accordingly, Dr. Toporoff only agreed to testify in the Second Lawsuit if Plaintiff's counsel retained a nuclear cardiologist.
 

 25. Plaintiff did not consult with [nuclear cardiologist] Dr. Travin until March 30, 2016.
 

 26. Plaintiff did not consult with [nuclear cardiologist] Dr. Borges-Neto until mid-November, 2016.
 

 27. Accordingly, as of the date the Second Lawsuit was filed, Plaintiff had no cardiologist ... willing to testify against ... Dr. Movahed ....
 

 Upon the findings, the trial court made the following relevant legal conclusions:
 

 31. Dr. Toporoff's deposition testimony demonstrated that, at the time the Second Lawsuit was filed, he was "not willing" to testify that the medical care at issue failed to comply with the applicable standard of care.
 

 ....
 

 34. Dr. Pierce testified that he had no opinions that were critical of the medical care provided by Dr. Movahed ....
 

 35. As Mr. Preston died February 13, 2014, Plaintiff had two years to file a medical malpractice action. ...
 

 36. As of the date that the statute of limitations expired for the Second Lawsuit, February 13, 2016, Plaintiff had not complied with Rule 9(j).
 

 37. Despite the fact that Plaintiff subsequently obtained a nuclear cardiologist willing to testify regarding Dr. Movahed, it was only after the Second Lawsuit had been filed and after the statute of limitations had expired. ...
 

 We hold these findings support the conclusions, and the conclusions support the trial court's ultimate determination that "Plaintiff has failed to comply with the requirements of Rule 9(j) in regard to her
 
 *203
 
 Complaint in the Second Lawsuit, and that therefore, [her complaint] should be dismissed in its entirety, with prejudice." Specifically, finding 13 establishes that Dr. Toporoff was Plaintiff's only Rule 9(j) cardiologist who had reviewed Preston's care before the second lawsuit was filed. Finding 24 establishes that Dr. Toporoff only agreed to testify against Dr. Movahed if Plaintiff hired a nuclear cardiologist. And findings 14, 15, 25, and 26 establish that Plaintiff failed to consult with the nuclear cardiologists she retained until months after she filed the second lawsuit. Those findings support the part of finding 27 that, "as of the date the Second Lawsuit was filed, Plaintiff had no cardiologist ... willing to testify against ... Dr. Movahed ...." These findings support the trial court's dispositive conclusion that "Plaintiff has failed to comply with the requirements of Rule 9(j) in regard to her Complaint in the Second Lawsuit" and its ultimate decision to dismiss her complaint for substantive Rule 9(j) noncompliance.
 
 Cf.
 

 Thigpen v. Ngo
 
 ,
 
 355 N.C. 198
 
 , 204,
 
 558 S.E.2d 162
 
 , 166-67 (2002) ("Allowing a plaintiff to file a medical malpractice complaint and to then wait until after the filing to have the allegations reviewed by an expert would pervert the purpose of Rule 9(j)."). Accordingly, we affirm the trial court's order.
 

 In light of our holding that the trial court's findings and conclusions supported its determination that Plaintiff failed to substantively comply with Rule 9(j)'s requirement of securing a pre-lawsuit review medical expert willing to testify against Dr. Movahed, we need not address Plaintiff's remaining challenges to the sufficiency of the findings or conclusions supporting the trial court's additional determination that Plaintiff failed to substantively comply with Rule 9(j)'s requirement that it was reasonable for Plaintiff to expect Dr. Toporoff to qualify as an expert witness against Dr. Movahed.
 
 Cf.
 

 McGuire
 
 ,
 
 190 N.C. App. at 788
 
 ,
 
 661 S.E.2d at 758
 
 (affirming dismissal of a medical malpractice complaint for substantive Rule 9(j) noncompliance solely on the ground that the "[p]laintiff did not present the trial court with an expert who was 'willing to testify ....' " (citation omitted));
 

 id.
 

 at 788 n.1,
 
 661 S.E.2d at
 
 758 n.1 ("We decline to address the parties' arguments regarding Dr. Majors' review of the care given. In order to satisfy the Rule 9(j)(1) requirements, plaintiff's expert must have been willing to testify. Because he was not so willing, it is irrelevant whether he in fact reviewed the care that plaintiff received.").
 

 *666
 

 III. Conclusion
 

 Because the trial court's findings supported by Dr. Toporoff's deposition testimony established that his willingness to testify against Dr. Movahed was conditioned upon Plaintiff securing a nuclear cardiologist,
 
 *204
 
 both of whom were consulted and retained months after she filed her second complaint and the applicable statute of limitations period had expired, no factual support existed for that part of Plaintiff's Rule 9(j) certification that her second complaint had been "reviewed by a person ... willing to testify that the medical care did not comply with the applicable standard of care." Accordingly, we affirm the trial court's order granting Defendant's motion to dismiss Plaintiff's complaint for substantive Rule 9(j) noncompliance.
 

 AFFIRMED.
 

 Judges TYSON and ZACHARY concur.
 

 [1]
 

 The remaining Defendants have settled the claims against them and Plaintiff has voluntarily dismissed them from this appeal pursuant to N.C. R. App. P. 37(e)(2) (2018).
 

 [2]
 

 Plaintiff attached Dr. Toporoff's 10 November 2015 affidavit, which was relevant to her first lawsuit against the hospitalists. She later supplied Defendant with Dr. Toporoff's 12 February 2016 affidavit, which was relevant to her second lawsuit and intended to be attached to her response. We discuss only Dr. Toporoff's second affidavit.