IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-30

 Filed: 3 December 2019

Cabarrus County, No. 16 CVS 508

CHARITY MANGAN, Plaintiff

 v.

JAMES S. HUNTER, DDS, JAMES S. HUNTER, DDS, P.A., JENNIFER WELLS,
DDS, AND JENNIFER L. WELLS, DDS, P.A. d/b/a FIRST IMPRESSIONS FAMILY
DENTISTRY, Defendants

 Appeal by Plaintiff from Order entered 23 July 2018 by Judge Beecher R. Gray

in Cabarrus County Superior Court. Heard in the Court of Appeals 21 August 2019.

 Lanier Law Group, P.A., by Donald S. Higley, II, and Lancaster and St. Louis,
 PLLC, by Hilary A. St. Louis, for plaintiff-appellant.

 Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and Luke
 Sbarra, for defendants-appellees.

 HAMPSON, Judge.

 Factual and Procedural Background

 Charity Mangan (Plaintiff) appeals from an Order entered 23 July 2018

granting summary judgment in favor of Defendants James S. Hunter, DDS (Dr.

Hunter) and James S. Hunter, DDS, P.A. (collectively, Defendants) in this medical

malpractice action. The Record before us on appeal tends to establish the following:

 Plaintiff began visiting Dr. Hunter for dental treatment in 1986 and continued

to be a regular patient until Dr. Hunter’s retirement in 2013. During the twenty-
 MANGAN V. HUNTER

 Opinion of the Court

seven years that Plaintiff saw Dr. Hunter for dental care, Plaintiff developed

temporomandibular joint disorder, migraines, and fibromyalgia. She also developed

bruxism (teeth grinding). Plaintiff’s last appointment with Dr. Hunter was on 17

April 2013. At that time, Dr. Hunter reported no dental caries.1 Dr. Hunter did

recommend a crown along with continued use of Plaintiff’s dental guard.

 Seven months later, in November 2013, Plaintiff visited a new dentist, Dr.

Sherrill Jordan, for routine dental care. Dr. Jordan reported tooth erosion on nearly

all of Plaintiff’s teeth and twelve cavities. Plaintiff received a second opinion from

Dr. Wells, whose opinion was very similar to Dr. Jordan’s. Plaintiff received

treatment for thirteen cavities in December 2013 by Dr. Wells. In February 2014,

Plaintiff visited another new dentist, Dr. Jason Baker, and received additional dental

treatments in March 2014. Dr. Baker referred Plaintiff to Dr. Napenas in May 2014,

and Dr. Napenas subsequently diagnosed her with atypical odontalgia. Dr. Napenas

informed Plaintiff that “treatment [for atypical odontalgia] would include a life-long

management for the pain with similar medications as what she was already taking

for fibromyalgia.” He prescribed Plaintiff an antidepressant for nerve pain and stress

management. Plaintiff also alleged her primary care physician prescribed her blood

 1 The transcript and Record use the terms dental caries and cavities interchangeably. See
Dental caries, THE AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed. 1993) (defining dental caries as
“[t]he formation of cavities in the teeth by the action of bacteria”).

 -2-
 MANGAN V. HUNTER

 Opinion of the Court

pressure medication as a result of the stress of the situation. At the time of the filing

of the Complaint, Plaintiff was still seeing Drs. Baker and Napenas for treatment.

 In March 2015, Sharon Szeszycki, DDS (Dr. Szeszycki) was contacted by

Plaintiff’s counsel about the present action. Dr. Szeszycki, a dentist in the Chicago

area, has been working as an expert witness in the area of dental malpractice since

2007. Around 10 March 2015, counsel for Plaintiff mailed a letter to Dr. Szeszycki

that indicated it included a USB drive with Plaintiff’s records. On 20 March 2015,

Dr. Szeszycki reported, in her Affidavit Letter to Plaintiff’s counsel, “[a] reasonable

and meritorious cause for action exists with respect to James Hunter DDS[.]” Dr.

Szeszycki’s Affidavit Letter stated, in forming her opinion, she reviewed: “Mangan

timeline of events[,] Dr. Baker letter[,] Demand letter to Luke Sbarra March 2015[,]

Baker treatment plan[,] Perio charting[, and] Mangan teeth pics.” She continued to

find “Dr. Hunter failed to document any concerns he might have had regarding the

erosion issues during the Patient’s time as a patient in his practice for the purposes

of quantifying and analyzing the origin and progression of this disease process.”

 On 18 February 2016, Plaintiff filed her Complaint alleging medical

malpractice against Defendants in Cabarrus County Superior Court. In accordance

with Rule 9(j) of the North Carolina Rules of Civil Procedure, Plaintiff’s Complaint

alleged:

 [A]ll medical records pertaining to Defendants’ negligence . . .
 have been reviewed by a person or persons reasonably expected

 -3-
 MANGAN V. HUNTER

 Opinion of the Court

 to qualify as an expert witness under Rule 702 of the North
 Carolina Rules of Evidence and who is/are willing to testify that
 the medical care did not comply with the applicable standard of
 care.

Defendants accepted service on 13 April 2016 and submitted their Answer to

Plaintiff’s Complaint on 13 June 2016. The parties began discovery. On 27 April

2018, Plaintiff voluntarily dismissed her claims against Jennifer Wells, DDS and

Jennifer Wells, DDS, P.A. d/b/a First Impressions Family Dentistry without

prejudice.

 On 29 August 2016, Dr. Szeszycki responded to Defendants’ Rule 9(j)

interrogatories. The relevant responses are as follows:

 4. Specifically identify all documents you reviewed to form your
 opinion about the medical care rendered by any Defendants.

 RESPONSE [Dr. Szeszycki]

 I reviewed the following materials:
 Mangan timeline of events
 Dr. Baker letter
 Demand letter to Luke Sbarra March 2015
 Baker treatment plan
 Perio charting
 Mangan teeth pics

 5. State with specificity the date you received the medical
 records regarding Plaintiff, the date you actually reviewed the
 medical care rendered, when and to whom you expressed your
 opinions regarding the medical care Defendants provided to
 Plaintiff, and whether you provided anyone a written, verbal, or
 other report regarding your conclusions.

 RESPONSE

 -4-
 MANGAN V. HUNTER

 Opinion of the Court

 I received the materials on or about March 15, 2015 and
 began my review on that date. I continued my review on
 March 17, 2015 and then prepared a written Affidavit on
 March 20, 2015 expressing my opinions. (R p. 48).

 On 2 April 2018, Plaintiff designated Dr. Szeszycki as an expert witness.

Plaintiff submitted “Dr. Szeszycki is expected to testify that Defendants breached the

standard of care in their care and treatment of [Plaintiff]” and that “Dr. Szeszycki

bases her opinions on her education and training as well as her review of [Plaintiff’s]

medical records.”

 Defendants deposed Dr. Szeszycki on 10 May 2018. Dr. Szeszycki’s deposition

revealed the following exchanges:

 [Counsel for Defendants:] [W]hat information do you have that
 you relied on that you do not have with you printed out . . . ?

 [Dr. Szeszycki:] Okay. There is a Baker treatment plan, Baker
 updated treatment plan. There was a demand letter to you.
 There’s Dr. Baker X-ray, Dr. Baker letter. There’s a file that says
 Gawthrop-Wells-Mangan. Another one that’s Hunter-Mangan,
 which I think is what I have with me because that’s his clinical
 notes, Dr. Hunter’s clinical notes, and then there is a Hunter,
 DDS, James condensed version, which is his dep. Jordan DDS.
 Mangan timeline of events. . . .

 ....

 [Counsel for Defendants:] This is, I believe, your responses to the
 9(j) discovery responses. Do you recall making these responses?

 [Dr. Szeszycki:] Yes.

 -5-
 MANGAN V. HUNTER

 Opinion of the Court

[Counsel for Defendants:] And in number 4, do you recall the
question specifically identify all documents you reviewed to form
your opinion about the medical care rendered by the Defendants?

 ....

[Dr. Szeszycki:] Yes.

[Counsel for Defendants:] And your response was I reviewed the
following materials, and you have a list of the materials that you
listed -- that you reviewed?

[Dr. Szeszycki:] Yes.

[Counsel for Defendants:] That is the material you reviewed,
correct?

[Dr. Szeszycki:] At the time, yes.

 ....

[Counsel for Defendants:] And those were the only documents
provided to you when you did your review in March of 2015,
correct?

[Dr. Szeszycki:] Yes.

 ....

[Counsel for Defendants:] And prior to the filing of the lawsuit,
the documents that you reviewed would have been those listed on
interrogatory number 4 . . . correct?

[Dr. Szeszycki:] Correct.

[Counsel for Defendants:] And no other documents, correct?

[Dr. Szeszycki:] Correct.

 ....

 -6-
 MANGAN V. HUNTER

 Opinion of the Court

 [Counsel for Defendants:] And those documents mentioned in
 [Interrogatory] answer number 4, that’s the complete universe of
 information you considered in March of 2015, correct?

 [Dr. Szeszycki:] I’m going to say I would like to have said that I
 looked at Dr. Hunter’s notes, so I can’t answer that.

 [Counsel for Defendants:] Did you?

 [Dr. Szeszycki:] I’d have to look -- let’s see here.

 [Counsel for Defendants:] It’s not on the list?

 [Dr. Szeszycki:] It’s not on the list. I know. That’s a surprise to
 me.

 [Counsel for Defendants:] So because it’s not on the list, can you
 say under oath today that you looked at his notes?

 [Dr. Szeszycki:] I -- because it is not on the list, I cannot say that
 I looked at his notes, correct. . . . I would find it unusual for me to
 have given an opinion without looking at the notes. . . .

When asked specifically about Defendants’ alleged malpractice, Dr. Szeszycki

testified that “[her] feelings about [Dr. Hunter’s] shortcomings have to do with what’s

not contained in his note taking . . . [a]nd also what is contained in his note taking.”

 On examination by Plaintiff’s counsel, Dr. Szeszycki stated: “I would never

base my opinion on someone’s report, for instance, the timeline of events that was

written by the patient. I would always have looked at the records.” Defendants’

counsel then inquired: “Can you testify under oath in this case that you reviewed Dr.

Hunter’s records pertaining to the care Miss Mangan received at Dr. Hunter’s office?”

 -7-
 MANGAN V. HUNTER

 Opinion of the Court

At that time, Dr. Szeszycki responded: “I’m going to testify under oath that I would

have looked at Dr. Hunter’s clinical notes in making my -- in making my decision. It

is not listed on the affidavit.”

 At the conclusion of the deposition, Defendants revisited the question of

whether Dr. Szeszycki reviewed Plaintiff’s medical records.

 [Counsel for Defendants:] [Y]ou’ve stated two different things.
 You’ve stated under oath in your 9(j) responses that you did not
 have Dr. Hunter’s records. . . . Now, you’re stating that you have
 no reason to doubt you received them and that you normally
 would do it. So I’m asking you can you now under oath change
 what you previously said under oath, which is that you did not
 have those records. I want you to be able to tell me why under
 oath you can say today that you reviewed Dr. Hunter’s records in
 March of 2015.

 [Dr. Szeszycki:] I’m going to make a statement here. You asked
 me under oath could I see, given what I wrote down in the
 affidavit, is information that’s written there, did I see Dr.
 Hunter’s notes in that list of materials? And the answer is no.
 Under oath, I will say no, but it is unlikely that I would not have
 looked at Dr. Hunter’s notes in making my opinion.

 ....

 [Counsel for Defendants:] . . . I’m asking right now as you sit here
 and testify under oath, the best you can say is consistent with
 what you’ve previously said under oath is that you cannot say
 under oath that you reviewed Dr. Hunter’s medical records prior
 to the time that the lawsuit was filed, correct?

 [Dr. Szeszycki]. I cannot say under oath and based on my
 affidavit letter that I saw Dr. Hunter’s clinical notes. I can say --
 I can say that when I -- in completing the file, I asked for more
 information . . . and when I received Dr. Hunter’s notes, I went,

 -8-
 MANGAN V. HUNTER

 Opinion of the Court

 oh, yes, I’ve seen these, and, yet, they’re not listed here. I will
 agree with you. They are not listed here on my affidavit letter.

 On 30 May 2018, Defendants filed a Motion for Summary Judgment pursuant

to Rules 9(j) and 56 of the North Carolina Rules of Civil Procedure. Defendants’

Motion for Summary Judgment alleged:

 The Rule 9(j) discovery responses of Dr. Sharon Szeszycki . . . and
 the deposition transcript of Dr. Sharon Szeszycki . . . disclose her
 failure to review the medical and dental records Rule 9(j) requires
 prior to Plaintiff’s filing of this civil action. Consequently, in light
 of this Rule 9(j) failure, no genuine issue of material fact exists
 and Defendants are entitled to judgment as a matter of law.

In response, on 5 July 2018, Plaintiff’s counsel filed an Affidavit of Attorney for

Plaintiff, averring “Dr. [Szeszycki] acknowledged receipt of his records and reviewed

them.” Dr. Szeszycki also filed an affidavit on 5 July 2018, averring: “Since the

deposition and refreshing my memory as to my notes and research, I can say that I

am certain I reviewed Defendant Hunter’s dental records prior to rendering my

opinion in this matter and prior to the filing of this lawsuit.”

 On 12 July 2018, the trial court entered “Order Granting Defendant James S.

Hunter, DDS and James S. Hunter, DDS, P.A. Summary Judgment” (Order). The

Order was served on Plaintiff after entry on 23 July 2018. In the Order, the trial

court made what it termed “undisputed findings of fact and conclusions of law.” The

trial court, however, also found “[t]he totality of the evidence before the Court

indicates Dr. Szeszycki failed to review all medical records pertaining to Defendants’

 -9-
 MANGAN V. HUNTER

 Opinion of the Court

alleged negligence that were available . . . .” Plaintiff timely appealed this Order on

15 August 2018.

 Issue

 The issue in this appeal is whether the trial court erred by granting summary

judgment in favor of Defendants on the basis of its finding Plaintiff’s expert did not

review Plaintiff’s medical records as required by Rule 9(j).

 Analysis

 I. Standard of Review

 “Our standard of review of an appeal from summary judgment is de novo; such

judgment is appropriate only when the record shows that there is no genuine issue

as to any material fact and that any party is entitled to a judgment as a matter of

law.” In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and

quotation marks omitted). “Since summary judgment is proper only where there is

no genuine issue of material fact, summary judgment orders should not include

findings of fact.” Raymond v. Raymond, ___ N.C. App. ___, ___, 811 S.E.2d 168, 173

(2018). “We review de novo a trial court’s dismissal of a medical malpractice

complaint for substantive Rule 9(j) noncompliance.” Preston v. Movahed, ___ N.C.

App. ___, ___, 825 S.E.2d 657, 661, disc. rev. allowed ___ N.C. ___, 830 S.E.2d 818

(2019).

 II. Summary Judgment and Rule 9(j)

 - 10 -
 MANGAN V. HUNTER

 Opinion of the Court

 Summary judgment is appropriate when “the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that any party is entitled

to a judgment as a matter of law.” N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). “Upon

a motion for summary judgment, the moving party carries the burden of establishing

the lack of any triable issue and may meet his or her burden by proving that an

essential element of the opposing party’s claim is nonexistent.” Hawkins v.

Emergency Med. Physicians of Craven Cnty., PLLC, 240 N.C. App. 337, 341, 770

S.E.2d 159, 162 (2015) (alterations, citations, and quotation marks omitted).

 Summary judgment is a procedural way in which parties can ensure

compliance with Rule 9(j) in medical malpractice actions. See Barringer v. Wake

Forest Univ. Baptist Med. Ctr., 197 N.C. App. 238, 255, 677 S.E.2d 465, 477, disc.

review denied, 363 N.C. 651, 684 S.E.2d 290 (2009) (“The Rules of Civil Procedure

provide other methods by which a defendant may file a motion alleging a violation of

Rule 9(j). E.g., N.C. Gen. Stat. § 1A-1, Rules 12, 41, and 56 (2005). Rule 9(j) itself,

however, does not provide such a method.”). Rule 9(j), in relevant part, requires:

 Any complaint alleging medical malpractice by a health care
 provider pursuant to G.S. 90-21.11(2)a. in failing to comply with
 the applicable standard of care under G.S. 90-21.12 shall be
 dismissed unless:

 (1) The pleading specifically asserts that the medical care and all
 medical records pertaining to the alleged negligence that are
 available to the plaintiff after reasonable inquiry have been

 - 11 -
 MANGAN V. HUNTER

 Opinion of the Court

 reviewed by a person who is reasonably expected to qualify as
 an expert witness under Rule 702 of the Rules of Evidence and
 who is willing to testify that the medical care did not comply
 with the applicable standard of care;

 (2) The pleading specifically asserts that the medical care and all
 medical records pertaining to the alleged negligence that are
 available to the plaintiff after reasonable inquiry have been
 reviewed by a person that the complainant will seek to have
 qualified as an expert witness by motion under Rule 702(e) of
 the Rules of Evidence and who is willing to testify that the
 medical care did not comply with the applicable standard of
 care, and the motion is filed with the complaint[.]

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2017). In sum, Rule 9(j) requires the person a

plaintiff seeks to have qualified as an expert review “all medical records pertaining

to the alleged negligence that are available to the plaintiff after reasonable inquiry”

prior to the filing of the complaint. See id.

 Rule 9(j) was added to the North Carolina Rules of Civil Procedure in 1995.

See Vaughan v. Mashburn, 371 N.C. 428, 434, 817 S.E.2d 370, 375 (2018). “Rule 9(j)

serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice

claims by requiring expert review before filing of the action.” Moore v. Proper, 366

N.C. 25, 31, 726 S.E.2d 812, 818 (2012) (emphasis in original omitted) (citation

omitted). “[T]he rule averts frivolous actions by precluding any filing in the first place

by a plaintiff who is unable to procure an expert who both meets the appropriate

qualifications and, after reviewing the medical care and available records, is willing

to testify that the medical care at issue fell below the standard of care.” Vaughan,

 - 12 -
 MANGAN V. HUNTER

 Opinion of the Court

371 N.C. at 435, 817 S.E.2d at 375. Thus, compliance with Rule 9(j) is determined at

the time the complaint is filed. Moore, 366 N.C. at 31, 726 S.E.2d at 817 (citation

omitted). However, “a complaint facially valid under Rule 9(j) may be dismissed if

subsequent discovery establishes that the certification is not supported by the

facts[.]” Id. (citation omitted).

 A. The Trial Court’s Order

 Turning to the case sub judice, Defendants’ Motion for Summary Judgment

alleged Dr. Szeszycki “fail[ed] to review the medical and dental records Rule 9(j)

requires prior to Plaintiff’s filing of this civil action.” After considering the parties’

arguments, the trial court granted summary judgment in favor of Defendants. In its

Order, the trial court purported to make “undisputed findings of fact and conclusions

of law in connection with [the] Judgment[.]” Plaintiff contends that the trial court

erred in Findings of Fact 8, 13, and 14, ultimately arguing that Dr. Szeszycki did, in

fact, review Plaintiff’s medical records in compliance with Rule 9(j) prior to the filing

of the Complaint.

 Summary judgment is proper where there “is no genuine issue as to any

material fact[.]” N.C. Gen. Stat. § 1A-1, Rule 56(c). Here, necessarily, the issue of

whether Dr. Szeszycki reviewed the medical records in question prior to the filing of

Plaintiff’s Complaint is a material fact; the answer to that question determines

whether Plaintiff’s lawsuit may proceed on the merits. Upon our de novo review of

 - 13 -
 MANGAN V. HUNTER

 Opinion of the Court

the Record, we conclude the trial court’s Findings of Fact are not, as it claims,

“undisputed” and therefore that summary judgment was improper.

 The trial court’s Order cites our Supreme Court’s decision in Moore v. Proper

in support of its decision to make findings of fact at the summary judgment phase.2

Moore was decided by our Supreme Court in 2012 and affirmed a divided Court of

Appeals decision to reverse the trial court’s grant of summary judgment in favor of

the defendants. 366 N.C. 25, 25, 26, 28, 726 S.E.2d 812, 815 (2012). The trial court

granted the defendants’ motion for summary judgment on the basis that the

plaintiff’s expert was not reasonably expected to qualify under North Carolina Rule

of Evidence 702. Id. at 28, 726 S.E.2d at 815.

 The Supreme Court’s decision in Moore cautions lower courts against

conflating the requirements of Rule 9(j) with those of Rule 702 of the North Carolina

Rules of Evidence. Id. at 31, 726 S.E.2d at 817 (citing N.C. Gen. Stat. § 1A-1, Rule

9(j)(1)) (“[T]he preliminary, gatekeeping question of whether a proffered expert

witness is ‘reasonably expected to qualify as an expert witness under Rule 702’ is a

different inquiry from whether the expert will actually qualify under Rule 702.”). The

 2 The trial court’s Order, in footnote one, stated:

 The Court makes findings of fact and conclusions of law consistent with Moore
 v. Proper, 366 N.C. 25, 32, 726 S.E.2d 812, 818 (2012) (stating, “when a trial
 court determines a Rule 9(j) certification is not supported by the facts, the
 Court must make written findings of facts to allow a reviewing appellate court
 to determine whether those findings are supported by competent evidence,
 whether the conclusions of law are supported by those findings, and in turn,
 whether those conclusions support the trial court’s ultimate determination.”).

 - 14 -
 MANGAN V. HUNTER

 Opinion of the Court

Court emphasized that “the trial court is not generally permitted to make factual

findings at the summary judgment stage[ ]” and cautioned lower courts “a finding [of

fact] that reliance on a fact or inference is not reasonable will occur only in the rare

case in which no reasonable person would so rely.” Id. at 32, 726 S.E.2d at 818

(emphasis added) (citation omitted).

 This Court has recognized that although findings of fact are not proper at

summary judgment, “[i]t is not uncommon for trial judges to recite uncontested facts

upon which they base their summary judgment order, however when this is done any

findings should clearly be denominated as uncontested facts and not as a resolution

of contested facts.” Raymond, ___ N.C. App. at ___, 811 S.E.2d at 174 (citation and

quotation marks omitted). This reasoning aligns with our Supreme Court’s holding

in Moore instructing trial courts to grant summary judgment only under the rare

circumstance when there could be no other finding but that “no reasonable person

would so rely” on the forecasted or disputed evidence as to whether a party reasonably

expected a proffered expert to qualify under Rule 702. Moore, 366 N.C. at 32, 726

S.E.2d at 818.

 Here, we conclude the trial court erroneously applied Moore’s instruction by

making “undisputed findings of fact” at summary judgment in light of the evidence

in the case sub judice. The Record reflects, in multiple instances, that the issue before

the trial court is one of disputed and material fact rendering summary judgment

 - 15 -
 MANGAN V. HUNTER

 Opinion of the Court

wholly improper and, further, does not fall into the rare case described in Moore. See

id. Instead, the trial court’s Findings serve to resolve contested facts, inconsistent

with this Court’s prior opinion in Raymond. See ___ N.C. App. at ___, 811 S.E.2d at

174.

 First, in Finding 8, the trial court includes select citations to portions of Dr.

Szeszycki’s deposition testimony supporting summary judgment in favor of

Defendants as “undisputed facts.” However, Finding 8 omits important portions of

Dr. Szeszycki’s deposition that flag the factual question of whether she reviewed

Plaintiff’s medical records before the filing of the Complaint. During examination by

Defendants’ counsel, Dr. Szeszycki testified her answer to Interrogatory 4 included

all the materials that she reviewed. She reiterated her “Affidavit Letter” similarly

included the correct list of materials she reviewed. However, when asked later in the

deposition if her response to Interrogatory 4 is “the complete universe of information

[she] considered in March of 2015[,]” she responded: “I’m going to say I would like to

have said that I looked at Dr. Hunter’s notes, so I can’t answer that.” She continued:

“I would find it unusual for me to have given an opinion without looking at the notes.”

The issue was revisited at the conclusion of the deposition. Dr. Szeszycki emphasized

she “would never base [her] opinion on someone’s report, for instance, the timeline of

events that was written by the patient. [She] would always have looked at the

records.” Moreover, Dr. Szeszycki stated: “I’m going to testify under oath that I would

 - 16 -
 MANGAN V. HUNTER

 Opinion of the Court

have looked at Dr. Hunter’s clinical notes in making my -- in making my decision. It

is not listed on the affidavit.” Dr. Szeszycki conceded: “You asked me under oath

could I see, given what I wrote down in the affidavit, . . . did I see Dr. Hunter’s notes

in that list of materials? And the answer is no. Under oath, I will say no[.]” However,

she continued, “but it is unlikely that I would not have looked at Dr. Hunter’s notes

in making my opinion.”

 Defendants contend that it is clear from Dr. Szeszycki’s deposition that she did

not review Plaintiff’s medical records as required by Rule 9(j); we disagree. During a

line of questioning, Defendants’ counsel inquired: “And your feelings about [Dr.

Hunter’s] shortcomings have to do with what’s not contained in his note taking,

correct?”, to which Dr. Szeszycki responded, “[a]nd also what is contained in his note

taking.” At another point, Defendants’ counsel asked Dr. Szeszycki: “there’s no

clinical evidence that you are aware of indicating that decay existed as of April 2013,

correct?” Dr. Szeszycki answered, “Correct. According to Dr. Hunter’s notes, there is

no indication.” In both instances, it appears from our review of the deposition that

Dr. Szeszycki was testifying that a portion of the opinions she formed were based on

the contents of Dr. Hunter’s notes.

 In short, the gist of Dr. Szeszycki’s deposition testimony is apparent. Even

though the list of materials she provided did not state that it included Plaintiff’s

medical records, Dr. Szeszycki believed she reviewed the records prior to rendering

 - 17 -
 MANGAN V. HUNTER

 Opinion of the Court

her opinion on the matter. Whether her belief is accurate or not, however, is a

genuine issue of material fact to be resolved.

 Second, in Finding 13, the trial court purported to find “[t]he totality of the

evidence before the Court indicates Dr. Szeszycki failed to review all medical

records . . .” Finding 13 indicates the trial court engaged in weighing “[t]he totality

of the evidence” before it. Similarly, in Finding 14, the trial court stated “the

Affidavits do not satisfy the Court[.]” These Findings, weighing the evidence, are

inconsistent with our summary judgment standard. Thus, we conclude it was error

for the trial court to make “undisputed findings of fact” at summary judgment in this

case because the trial court’s Findings actually resolved a genuine issue of material

fact as to whether Dr. Szeszycki reviewed Plaintiff’s medical records prior to the filing

of Plaintiff’s Complaint.

 Our own review of the Record reveals additional facts further supporting our

conclusion there are factual questions present that are not “undisputed,” as the trial

court found. In her initial Affidavit Letter to Plaintiff’s counsel, Dr. Szeszycki found

“Dr. Hunter failed to document any concerns he might have had regarding the erosion

issues during the Patient’s time as a patient in his practice for the purposes of

quantifying and analyzing the origin and progress of this disease process [,]” signaling

Dr. Szeszycki may have reviewed records or clinical notes not listed in the “Materials

Reviewed” section. Although counsel for Plaintiff concedes that Dr. Szeszycki’s

 - 18 -
 MANGAN V. HUNTER

 Opinion of the Court

response to Interrogatory 4 omits Plaintiff’s medical records, counsel has repeatedly

averred it was purely a typographical omission. Moreover, Dr. Szeszycki’s response

to Interrogatory 5 raises a factual question of whether or not she reviewed the medical

records. Specifically, Interrogatory 5 asked for the date Dr. Szeszycki “received the

medical records” and “the date [she] actually reviewed the medical care rendered[.]”

Thus, when asked when she received and reviewed the records, Dr. Szeszycki

answered that she received and reviewed “the materials” on 15 March 2015. As such,

we conclude the trial court erred in granting summary judgment in favor of

Defendants.

 B. The Crocker Framework

 Although Rule 9(j) compliance is a conclusion of law reviewed de novo, Preston,

___ N.C. App. at ___, 825 S.E.2d at 661, we are unable to review the trial court’s

conclusion Plaintiff failed to comply with Rule 9(j) when a genuine issue of material

fact persists. We further recognize, in preliminary matters such as 9(j) compliance,

it is not practical for the jury to be the ultimate fact finder. As such, when factual

questions like the one before us arise, we are guided by our Supreme Court’s decision

in Crocker v. Roethling, which this Court followed in Barringer. See Crocker v.

Roethling, 363 N.C. 140, 140, 675 S.E.2d 625, 625 (2009); Barringer, 197 N.C. App.

at 250-51, 677 S.E.2d at 474.

 - 19 -
 MANGAN V. HUNTER

 Opinion of the Court

 In Crocker, our Supreme Court reversed and remanded this Court’s

affirmation of the trial court’s grant of summary judgment in a medical malpractice

action. 363 N.C. at 142, 675 S.E.2d at 628. The majority held “that in a medical

malpractice case: [ ] gaps in the testimony of the plaintiff’s expert during the

defendant’s discovery deposition may not properly form the basis of summary

judgment for the defendant[.]” Id. at 149, 675 S.E.2d at 632. Justice (later Chief

Justice) Martin, in his concurrence, elaborated on the way in which trial courts could

properly exercise their discretion. He ultimately concluded the trial court should

consider conducting voir dire on proffered experts in cases where “the admissibility

decision may be outcome-determinative[.]” Id. at 152, 675 S.E.2d at 634 (Martin, J.,

concurring). He emphasized “the expense of voir dire examination and its possible

inconvenience to the parties and the expert are justified in order to ensure a fair and

just adjudication.”3 Id. We agree.

 “[T]he voir dire procedure provides a more reliable assessment mechanism

than discovery depositions or conclusory affidavits, protecting the jury from

unreliable expert testimony yet preserving the jury’s role in weighing the credibility

of expert testimony when appropriate.” Id. at 153, 675 S.E.2d at 634-35. By

 3 Justice Martin’s concurrence in Crocker is the controlling opinion. See id. at 154 n. 1, 675
S.E.2d at 635 n. 1 (Newby, J., dissenting); see also Barringer, 197 N.C. App. at 251 n. 4, 677 S.E.2d at
474 n. 4 (“Justice Martin’s concurring opinion, having the narrower directive, is the controlling opinion
. . . and requires the trial court to conduct a voir dire examination of the proffered expert witness.”
(citations and quotation marks omitted)).

 - 20 -
 MANGAN V. HUNTER

 Opinion of the Court

conducting voir dire in close cases, the trial court is provided with “an informed basis

to guide the exercise of its discretion” Id. at 152, 675 S.E.2d at 634.

 Indeed, in Barringer, this Court reversed and remanded the trial court’s grant

of summary judgment in favor of the defendant on the question of whether the

plaintiff’s expert was “sufficiently familiar with the applicable standard of care.” 197

N.C. App. at 247, 261, 677 S.E.2d at 472, 474. In Barringer, it was unclear from the

proffered expert’s affidavit and subsequent deposition testimony whether he applied

a national or local standard of care in forming his opinion. Id. at 250, 677 S.E.2d at

474. This Court, in looking at the expert’s initial affidavit and subsequent deposition

testimony, concluded it “present[ed] a close question” and was “undeveloped.” Id. at

247, 250, 677 S.E.2d at 472, 474 (citing Crocker, 363 N.C. at 147, 675 S.E.2d at 631).

Therefore, this Court remanded the case to the trial court “with instructions to

conduct a voir dire examination of [the expert] in order to ‘determine the admissibility

of the proposed expert testimony.’ ” Id. at 251, 677 S.E.2d at 474 (citing Crocker, 363

N.C. at 153, 675 S.E.2d at 634 (Martin, J., concurring)). Defendants cite Barringer

in support of their argument for summary judgment. However, this Court concluded

there “the [expert’s] affidavit is plainly inconsistent with [the expert in question’s]

prior sworn testimony and does not create a genuine issue of fact . . . .” Id. at 257-58,

677 S.E.2d at 478. We conclude, in the case sub judice, there is a genuine issue of

 - 21 -
 MANGAN V. HUNTER

 Opinion of the Court

material fact, notwithstanding the existence of an allegedly inconsistent subsequent

affidavit.

 Here, the trial court granted Defendants’ Motion for Summary Judgment,

finding it was “undisputed” Plaintiff’s expert “failed to review all medical records

pertaining to Defendants’ alleged negligence that were available to Plaintiff after

reasonable inquiry prior to Plaintiffs’ [sic] filing of her civil action.” As we have noted,

however, that fact is disputed by the parties and, further, the resolution of that fact

is outcome determinative. Dr. Szeszycki’s deposition testimony does not

unequivocally establish she did or did not review Plaintiff’s medical records as

Defendants contend. Therefore, we conclude, as this Court did in Barringer, it is a

“close call” whether the Record and evidence to date shows Dr. Szeszycki did or did

not review Plaintiff’s medical records prior to the filing of the Complaint, rendering

summary judgment improper. Thus, we hold, consistent with Crocker and Barringer,

the trial court should conduct a voir dire of Plaintiff’s expert to “provide[ ] a more

reliable assessment mechanism than discovery depositions or conclusory affidavits[.]”

Crocker, 363 N.C. at 153, 675 S.E.2d at 634-35.

 Conclusion

 Based on the foregoing reasons, we vacate the trial court’s 23 July 2018 Order

and remand this matter to the trial court to hold a voir dire examination of Dr.

 - 22 -
 MANGAN V. HUNTER

 Opinion of the Court

Szeszycki to resolve the issue of whether Dr. Szeszycki reviewed Plaintiff’s medical

records in compliance with Rule 9(j) prior to the filing of the Complaint.

 VACATED and REMANDED.

 Judges INMAN and BROOK concur.

 - 23 -